UNITED STATES *v.* ALFRED DUNHILL OF LONDON, INC. (No. 4481)[1]

United States Court of Customs and Patent Appeals, March 5, 1945

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.
*John D. Rode* (*Jacob L. Klingaman* of counsel) for appellee.
*B. A. Levett, amicus curiae.*

[Oral argument February 8, 1945, by Mr. Donohue, Mr. Klingaman, and Mr. Levett]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding from a judgment of the United States Customs Court, First Division, affirming by a divided court the judgment of a single judge holding the entered values of certain merchandise imported by appellee to be correct.

It appears that on November 7, 1941, appellee imported from Alfred Dunhill, Ltd., of London, England, two qualities of tobacco pipes, one invoiced as "Standard Bruyere pipes" entered at £0 16s. 2d., and the other as "Shell Briar pipes" entered at £0 15s. 6d. They were appraised at £0 23s. 4d. and £0 22s. 4d., respectively. The difference between the invoice values and the appraised values was occasioned by the addition to the former of 33⅓ per centum, which represented a purchase tax levied in accordance with English

[1] C. A. D. 305.

law on chargeable goods sold to what are known as unregistered purchasers for home consumption.

It was agreed by the parties that the merchandise had no foreign, export, or United States values, and that the proper dutiable value was cost of production as defined in the Tariff Act of 1930. The controversy arises out of whether or not the said tax is properly a part of the cost of production.

The evidence before the court below consisted of two affidavits by the works manager of the Dunhill concern in England, and a copy of the Finance (No. 2) Act, 1940, 3 & 4 Geo. 6, ch. 48.

It appears that in certain instances sales of the merchandise for home consumption in the United Kingdom were subject to the provisions of the said British law. Purchases were not considered chargeable with the tax when the sale was made to a registered dealer or for exportation. A registered dealer is a wholesale merchant or manufacturer selling chargeable goods. Every such merchant or manufacturer is required to register under the said act. "Chargeable goods" are enumerated in schedules of the act, one of which includes tobacco pipes, and the rate of tax thereon is one-third of the wholesale value thereof. Wholesale value is defined as the price the chargeable goods would bring, without the tax, at a sale made when the tax becomes due by a person selling at wholesale in the markets of the United Kingdom to a retail dealer. The act requires the seller of chargeable goods to note the tax as a separate item on the invoice and states that it shall be recoverable as a debt to His Majesty from the seller. The registered dealer is not permitted to make a profit on the tax nor include it as part of the purchase price of chargeable goods. No liability for payment of the tax arises until a sale is made to an unregistered person or firm, but when such sale is made the registered dealer must then collect the amount of the tax from the buyer.

The provision of the tariff act involved reads as follows:

SEC. 402. VALUE.

      *       *       *       *       *       *       *

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

\* \* \* \* \* \* \*

It is contended by the Government that the British purchase tax must be included in the "usual general expenses" incurred by the manufacturer pursuant to paragraph (2) of section 402 (f).

In our opinion, since it was agreed that the valuation of the merchandise was based on cost of production the pertinent items of the paragraph must be strictly followed in calculating such cost, and any reference to any other kind of value, such as substitute or constructive values, is irrelevant and need not be discussed.

The tariff act defines the different kinds of value to be found on imported merchandise and under its terms such value shall be the foreign value or the export value, whichever is higher. If neither of those values can be satisfactorily ascertained, then United States value is found; and if, as in this case, none of the three is available, then the cost of production is to be employed. No values may be found except in the manner and by the means defined by the tariff act.

The only question to be decided here is whether the British tax is properly included in "The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise."

This is a case of first impression, and of course none of the cited cases is controlling.

In our opinion the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts.

There is no relation whatsoever between the purchase tax here and the usual general expenses to which we have herein referred. The tax is no part of the manufacturer's expense upon which his profit is calculated. In appraising the value of chargeable goods under the British law it may be noted that such appraisal does not include the tax. It remains as a separate and distinct item payable as such, and therefore cannot be said to constitute an element included within the usual general expenses of his business.

In our opinion the British purchase tax is not an element which may be properly added in calculating the dutiable value of the involved merchandise on the basis of cost of production.

The judgment of the United States Customs Court is *affirmed*.